IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Pathway IP LLC,<br><br>      Plaintiff,<br><br>v.<br><br>The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on the Attached Schedule A,<br>      Defendants. | Case No. 1:24-cv-05218<br><br>**Judge Franklin U. Valderrama**<br><br>**Magistrate Judge Jeffrey T. Gilbert**<br><br>JURY TRIAL DEMAND |

**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Pathway IP LLC ("Pathway") submits this Brief in support of its Motion for Entry of a Preliminary Injunction against certain Defendants in this Action. Specifically, Pathway excludes from this Motion the Defendants who have placed bonds with the Court in lieu of injunctive relief except that Pathway respectfully requests that the Court order that the bonds placed by Defendants remain with the Court until a final determination in this case or further order from the Court, consistent with the stipulations filed by Plaintiff and those Defendants. Pathway believes that such bonds sufficiently protect, though not completely or adequately protect, Pathway from potential harm through ongoing infringement. Consequently, the following groups of Defendants are excluded from the remainder of this Motion:

> Defendant No. 7 – VividNWUS; Defendant No. 8 – XingBoom; Defendant No. 9 – ShutterLight; Defendant No. 10 – HiFocusiUS; Defendant No. 11 – ShiQiaoShang; Defendant No. 12 – Jinsnow; Defendant No. 13 – XuanXiuUS; Defendant No. 14 – Photo Guard; Defendant No. 50 – Lixinshunyi; Defendant No. 58 – catchpiccus; Defendant No. 75 – QiHuichang; Defendant No. 76 – RUIHOTOR; and Defendant No. 77 – iphotoxx

Collectively, the "Neewer Group Defendants" (Stipulation filed at Dkt. 36 – Order granting stipulated relief at Dkt. 37).

> Defendant No. 17 – Sensyne; Defendant No. 26 – Wanfaau; Defendant No. 42 – XITENG TECH; Defendant No. 49 – Blights; and Defendant No. 69 – EESTOREAMZ

(Stipulation filed at Dkt. 24 – Order granting stipulated relief at Dkt. 56).

Regarding the remaining Defendants (*i.e.*, the "Subject Defendants"), Plaintiff requests injunctive relief and requests a hearing on this Motion as follows:

## INTRODUCTION AND SUMMARY OF ISSUES

Plaintiff filed a Motion for Temporary Restraining Order seeking to restrain ongoing sales of the Accused Products and to restrain certain online accounts associated with the past infringement; specifically, online accounts with marketplaces through which Defendants were

1

making infringing sales. *See* Dkt. 11-12. The Court issued a Temporary Restraining Order ("TRO") on July 9, 2024, effective at 6:00pm on July 12, 2024. Dkt. 14. The Court then granted-in-part and denied-in-part, Plaintiff's request to extend the TRO. Specifically, the Court extended the TRO for 14 days as to all Defendants with the exception of the Neewer Group Defendants. Dkt. 54. In view of their appearance and the then-pending Motion to Vacate filed by the Neewer Group Defendants, the Court denied the request to extend the TRO as to those Defendants. *Id.* Consequently, with the exception of the Neewer Group Defendants, the TRO was extended to and will expire on August 9, 2024 at 6:00pm.

Through enforcement efforts relating to the TRO, Plaintiff has provided notice to various third parties who operate the marketplaces used by Defendants to conduct their infringement, as outlined in the Complaint. Specifically, Plaintiff provided notice of the TRO to Amazon.com and Walmart.com. It is Plaintiff's understanding that both of those third parties have provided notice of this case to the relevant Defendants who were using the marketplaces operated by such third parties. In fact, after providing notice to the third-party marketplaces, Defendants began contacting Plaintiff to discuss this case and began appearing through counsel.

Additionally, Plaintiff filed a Motion for Alternative Service with its TRO Motion (*see* Dkt. 13), which was also granted by the Court (Dkt. 14). As requested in the Motion for Alternative Service, and as granted by the Court, Plaintiff sought leave to serve each of the Defendants by electronic mail to the merchant accounts and electronic stores listed in Schedule A to the Complaint or additional email addresses identified by the third-party marketplaces. On August 6, 2024, Plaintiff completed formal service on all non-dismissed Defendants through electronic mail to their respective email addresses. *See* Declaration of Benjamin A. Campbell (Dkt. 67).

As noted above, Plaintiff moves for a preliminary injunction as to only a subset of

2

Defendants, specifically, the Subject Defendants who have not filed a bond with the Court in connection with a joint stipulation with Plaintiff and who have not already been dismissed.

A TRO having been issued, a preliminary injunction is now appropriate in this case and should be granted against the Subject Defendants. As alleged in Plaintiff's Complaint, the Subject Defendants sell ring light devices that infringe upon one or more claims of U.S. Patent No. 7,841,729 (the '729 Patent). Currently, the Subject Defendant's infringing sales are being prevented by the TRO. However, absent a preliminary injunction, ongoing infringing sales would continue to have a detrimental effect on Plaintiff and cause irreparable harm to its business. Among other reasons, the Subject Defendants' infringing sales are preventing Plaintiff from obtaining a foothold in the competitive lighting market and preventing Plaintiff from the benefit that would otherwise stem from its right to exclude under the '729 Patent. In particular, Plaintiff has been attempting to generate traction for its embodying products that it offers for sale under its Pro Glow line of products. *See* Exhibit A screenshot of Plaintiff's website at https://proglowgear.com/collections/all (PIP-000001 – PIP-000002).

Even if Plaintiff is able to generate momentum with its sales in the face of the Subject Defendants' infringement, Plaintiff will have to reduce its price to compete with the infringing sales thereby leading to price erosion and/or loss of sales, market share, and reputational goodwill that would stem from sales that would occur in the absence of the Subject Defendants infringement. Moreover, the loss of an initial sale results in the loss of ongoing sales, such as replacements, because consumers are likely to return to the source of their initial purchase when purchasing a replacement. Thus, Plaintiff is losing market share in a compounding manner due to the Subject Defendants' infringement. Likewise, Subject Defendants' acts of infringement have eroded Plaintiff's exclusionary rights embodied in the '729 Patent. Plaintiff does not typically license out

its intellectual property. That is, Plaintiff is not a nonpracticing entity. To the contrary, Plaintiff seeks to aggressively exploit its intellectual property, including the '729 Patent, to develop, manufacture, and sell products to consumers. In other words, Plaintiff does not have a history of licensing the '729 Patent, or its other intellectual property. The above-described harms are irreparable, immediate, and will continue to accrue throughout the proceedings in this case absent a temporary restraining order and preliminary injunction. Therefore, a preliminary injunction is necessary to prevent ongoing harm until a final determination on the merits.

I. **STATEMENT OF FACTS**

    A. **Plaintiff and the Patent-in-Suit**

Plaintiff is a privately-owned company that markets and sells a variety of products including products that embody the '729 Patent. *See e.g.*, Exhibit A. Plaintiff obtained the '729 Patent by assignment from the previous owner and inventor so that Plaintiff could offer the embodying products to the market and believing that the '729 Patent would offer protection from infringing sales. Since purchasing the '729 Patent, Plaintiff has been taking steps to market and sell the embodying products but has been hampered in such efforts by the rampant infringement of the '729 Patent, including infringement by the Subject Defendants. Plaintiff provides notice of its patent rights on product listing pages on its website and on the packaging for the embodying products. *See e.g.*, Exhibit B at PIP-000006 – PIP-000045. Plaintiff also believes that the previous owner provided notice of the '729 Patent rights before assigning those rights to Plaintiff. *See e.g.*, *id.* at PIP-000003 – PIP-000005.

    B. **Subject Defendants' Infringing Conduct**

The Subject Defendants are internet merchants that appear to sell a variety of items. As particularly relevant to this case, Subject Defendants sell ring light products that embody the claims

of the '729 Patent as shown in the screenshots attached to the Complaint as Exhibit 2 and the exemplary claim chart attached to the Complaint as Exhibit 6. As set forth in detail in the Complaint and claim chart, the accused ring lights infringe the '729 Patent.

## II. ARGUMENT

Subject Defendants' purposeful, intentional, and unlawful conduct is causing and, unless enjoined, will continue to cause irreparable harm to Plaintiff, along with its reputation, goodwill, and market share. To stop this irreparable harm, Plaintiff respectfully requests that this Court, following any necessary hearing, issue a preliminary injunction ordering, among other things, the immediate cessation of sales of the infringing products, a recall of all infringing products currently on store shelves, and a cessation of advertisements for the infringing products. Without the relief requested by this Motion, Subject Defendants' unlawful activity will continue unabated, and Plaintiff will continue to suffer irreparable injury for which there is no adequate remedy at law.

### A. Applicable Standards

Courts have the discretion to issue an injunction to "prevent the violation of any rights secured by patent." 35 U.S.C. § 283[1]. The right to exclude others is among the most valuable rights – if not the most valuable right – secured by a patent grant. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.") (internal citations omitted). This right is particularly important to Plaintiff as it purchased the '729 Patent to use the right to exclude as the backdrop of its efforts to gain a foothold in the light accessory

---

[1] With respect to the applicable standard, the Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

5

market. The purpose of a preliminary injunction is to preserve the status quo by preventing future infringement pending a determination on the merits. *Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).

Generally, the party seeking an injunction must show that: (1) the movant is likely to succeed on the merits; (2) irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *See Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Abbott Labs v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 815-16 (N.D. Ill. 2007) (citing *Polymer Techs., v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. (1996)).

Regarding the first factor, success on the merits means demonstrating that it is likely that the patent is infringed and that the patent will survive any invalidity challenges. *See Titan Tire*, 566 F.3d at 1376. However, issued patents are presumed valid, and that presumption applies at trial as well as before trial. *Id*. at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id*. at 1377 (citing P*urdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., v. Nu-Kote Int'lm Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). Here, the Subject Defendants have not asserted invalidity of the '729 Patent. Even considering the counterclaims brought by the Neewer Group Defendants, the '729 Patent is likely to survive any validity challenge. The references cited to date simply do not demonstrate that all of the elements of the '729 Patent were known and combined in the manner claimed or that any

6

combination of prior art references would be obvious. While the Parties will, presumably, contest validity throughout this case and in their respective validity and invalidity contentions, at this point, the presumption of validity should overcome the lack of argument from the Subject Defendants and satisfy the likelihood that the '729 Patent will survive any invalidity challenge.

Infringement of a utility patent "involves a two-step process: (1) 'the court determines the scope and meaning of the asserted claims'; and (2) 'the properly construed claims are compared to the allegedly infringing device.'" *Edge Sys. LLC v. Aguila*, 635 Fed. Appx. 897, 902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). Plaintiff need only show a likelihood of infringement of one or more claims of the asserted patent to show a likelihood of success. *Id*.

The second factor, irreparable harm, means harms that cannot be fully remedied by a final judgment in the plaintiff's favor. *See H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-C-3581, 2021 U.S. Dist. LEXIS 187253, at *10 (N.D. Ill. Sept. 24, 2021) (citing *Kraft Foods Brands LLC v. Cracker Barrel Old Country Stores, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). Irreparable harm can be shown by, for example, loss of customers and market share, particularly where the specific loss of customers is not easily quantifiable, and loss of goodwill and reputation. *See e.g., Life Spine, v. Aegis Spine, Inc.*, 8 F.4th 531, 545-45 (7th Cir. 2021). Likewise, while the Supreme Court has rejected a presumption of irreparable harm stemming from the right to exclude in patent cases (*see eBay, v. MercExchange, LLC*, 547 U.S. 388 (2006)), that holding does not "swing the pendulum in the opposite direction" and thus "[w]hile a patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1147, 1149 (Fed. Cir. 2011).

The third factor, the balance of hardships, is measured by weighing the possibility of irreparable harm to the non-moving party if the injunction is issued, balanced against the irreparable harm the moving party will suffer if the relief is denied. *See Ty, v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). This has been described as a "sliding scale" analysis. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The more likely Plaintiff is to succeed on the merits, the less the balance of harms needs to weigh in its favor. *Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist. LEXIS 167796, *6 (N.D. Ill. November 27, 2012) (citing *Christian Legal*, 453 F.3d at 859). Here, Plaintiff has shown a willingness to accommodate any potential hardships felt by other Defendants and would do so for the Subject Defendants as well. Specifically, Plaintiff has been willing to accept a bond placed with the Court to protect Plaintiff from Defendants who might otherwise inflict as much damage upon Plaintiff as possible before retreating to the relative safety of a default judgment that is difficult to enforce against foreign entities. In other words, a suitable stipulated bond serves as an acceptable balance of the hardships in lieu of an injunction and could be negotiated between Plaintiff and any of the Subject Defendants who appear and want to avoid the injunction. In contrast, and as alleged in the Plaintiff's Complaint, various entities (potentially including the Subject Defendants) appear to be coordinating their efforts to infringe and evade enforcement of judgments by warning each other about lawsuits as they are filed. While the allegations in the Complaint were prospective because the case had not yet been filed, since the filing of the Complaint, Plaintiff has discovered that this case has been advertised on line with Defendants being warned to take action to evade enforcement. *See* Exhibit C (machine translated screenshot of article on qqdip.com last accessed on 8/6/2024 warning infringers to take action to reduce losses from judgments).

The Court weighs these factors, "sitting as would a chancellor in equity," when deciding

whether to grant the requested injunction. *Ty, Inc.*, 237 F.3d at 895 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

### B. Plaintiff is Likely to Succeed on the Merits

Plaintiff alleges infringement of its utility patent, the '729 Patent. The Subject Defendants are infringing at least Claim 1 of the '729 Patent, which states:

> 1. An illuminator device for illuminating one or more users in front of a web camera and a communication terminal comparing:
> a bulb having a toroidal shape for emitting light;
> a reflector having a circular configuration to conform to the toroidal shape of said bulb for projecting the emitted light; and
> an arm disposed between said bulb and the terminal for connection to the terminal, wherein said bulb is positionable relative to the web camera to provide optimal viewing of the user through the web camera.

'729 Patent, Claim 1

The exemplary claim chart attached to Plaintiff's Complaint as Exhibit 6 in combination with the screenshots attached to Plaintiff's Complaint as Exhibit 2 show that the accused ring light devices meet all of the claim elements of Claim 1. Accordingly, Plaintiff has demonstrated infringement of the requisite at least one claim of the '729 Patent. Consequently, Plaintiff has shown a high likelihood of success on its claim for infringement of the '729 Patent. With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence" – if presented – "recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). The Court need not resolve validity at this early stage. *Id*. At this point, because the Subject Defendants have not come forth with any challenge to the validity of the '729 Patent, the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[I]f a patentee moves for a preliminary

9

injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue."). Even considering the prior art identified by other Defendants, there is insufficient specificity presented to demonstrate that any Defendant has made a persuasive showing that the '729 Patent should be held invalid.

### C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The second element of the injunction analysis, whether Plaintiff will suffer irreparable harm absent the requested relief, "seeks to measure harms that no damages payment, however great, could address." *Celsis in Vitro, Inc., v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Here, Plaintiff will be immediately and irreparably harmed if the Subject Defendants are not enjoined from making, using, selling, and offering for sale the accused ring light devices. At a minimum, such harm consists of loss of the benefit of patent exclusivity and loss of Plaintiff's market share. Additionally, because the right to exclude is integral to Plaintiff's efforts to generate a foothold for its Pro Glow line of embodying products (*see* Exhibit A), the infringement by the Subject Defendants is preventing Plaintiff from establishing an ongoing business.

#### i. Plaintiff Will Suffer Immediate Irreparable Harm as a Result of the Loss of Its Patent Exclusivity

The ability to exclude others is fundamental to the patent right. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d at 1383 ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude."); *Smith Int'l, v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("The very nature of the patent right is the right to exclude others."). That right is rendered meaningless where others are permitted to continue their infringement. This is particularly true because Plaintiff has its patent right only for a limited time and seeks to use those patent rights to launch its Pro Glow line of products. Plaintiff

10

has invested significant resources into acquiring the '729 Patent and launching the Pro Glow line of products, which investment would be rendered meaningless if forced to compete with infringers. Likewise, Plaintiff has not licensed its rights under the '729 Patent to any other parties and has, instead, valued its exclusionary right. Thus, the inability to exclude others for any period of time during the term of the patent – including during the period of time necessary to reach a final judgment in this case – constitutes harm for which Plaintiff cannot be adequately compensated at law. Therefore, an injunction is necessary in order to preserve the *status quo* and Plaintiff's right to exclude others from practicing its invention. In *eBay*, the Supreme Court rejected a presumption previously applied in patent cases that held that the right to exclude alone was sufficient to establish irreparable harm. *See eBay*, 547 U.S. at 394. Since that holding, however, courts have continued to look to the right to exclude as a relevant factor to consider when weighing the existence of irreparable harm. *See e.g., Robert Bosch LLC*, 659 F.3d at 1149. This is particularly true where, as here, a plaintiff has shown a record of declining to license its patent rights and instead exploit the right of exclusion to further its interest in developing, marketing, and selling its own products.

      **ii. Plaintiff's Ability to Collect Monetary Damages as a Remedy for Infringement is, At Best, Uncertain**

The Subject Defendants are each located in foreign countries, primarily China, and sell the accused products through online marketplaces on Amazon.com and Walmart.com. This permits Subject Defendants a certain level of anonymity. Even if Plaintiff is able to identify domestic bank accounts owned by some of the Subject Defendants, the ease with which Subject Defendants can move funds in those accounts to foreign banks that are outside the reach of this Court warrants an injunction to prevent continued sales because it is not clear that Plaintiff would ever be able to collect even a prospective royalty for such sales. That is, without an injunction, Subject Defendants could continue to make infringing sales and regularly empty any domestic financial accounts, such

as assets held by the third-party marketplaces, and move those funds outside of Plaintiff's and the Court's reach. As entities without readily apparent or accessible domestic assets who operate through an online marketplace (thus shielding their operations), it is reasonable to infer that collecting monetary damages against Subject Defendants will be difficult, if not impossible. Such factors weigh in favor of finding irreparable harm. *See Peng v. Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254, at *7-8 (N.D. Ill. Sept. 14, 2021) (citing Robert Bosch LLC, 659 F.3d at 1155-56). Other Defendants have alleviated this concern, at least to an extent, by placing a bond with the Court. The bond ensures that if a Defendant continues to infringe and then defaults or otherwise attempts to evade enforcement of a judgment entered by the Court, there will at least be some funds to collect against. None of the Subject Defendants have placed a bond with the Court.

### iii. Plaintiff Will Suffer Immediate Irreparable Harm as a Result of a Loss of Market Share

Additionally, absent an injunction, Plaintiff will suffer a loss of market share. Loss of market share constitutes irreparable injury for which Plaintiff has no adequate remedy at law. *See Black & Decker v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm."). Plaintiff has invested significant resources in the '729 Patent and the right to exclude under the '729 Patent is critical to Plaintiff's business plan as it develops and markets its Pro Glow line of products which embody the '729 Patent. The right to exclude under the '729 Patent will be rendered useless, and Plaintiff's already committed resources wasted, if Plaintiff is forced to compete with infringers when establishing its Pro Glow line of products. If this market share that Plaintiff would otherwise obtain is lost due to the Subject Defendants' unlawful acts, it might never be recovered. Such loss cannot be remedied by mere monetary damages (or even a permanent injunction issued at the end of this case) and thus constitutes

12

irreparable harm. *See Canon, v. GCC Intern. Ltd.*, 2006-1615, 2008 U.S. App. LEXIS 2429, *11 (Fed. Cir. 2008) ("Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient.").

Here, it is clear that Plaintiff will lose market share if the Subject Defendants are not enjoined from continuing their infringing activities. Plaintiff and Subject Defendants are directly competing to sell products that embody the '729 Patent through the same channels of trade (*i.e.*, online) and only Plaintiff has the right to do so. Additionally, the vast majority of customers will purchase all of their lighting devices (if they have more than one) from a single source, likely in a single transaction. Thus, each sale of a ring light device made by the Subject Defendants is a sale that Plaintiff cannot make. To the extent a customer needs to make additional purchases, the loss of that initial sale results in the loss of the potential to make the ongoing sales for replacements due to damage or loss of the initial ring light device. For instance, if a consumer purchases one of the Subject Defendants' infringing products, that is a lost sale of Plaintiff's own patented product and a lost potential for repeat or returning sales should the original product need to be replaced, or if the customer wants a second device because the customer is likely to return to the original source for the replacement sale. This is particularly true with the Amazon.com Marketplace because consumers are shown their past sales and encouraged to reorder from the same listings used for those prior sales. Moreover, because the personal electronics industry is in part fueled by customer and influencer referrals and word of mouth, it is reasonable to infer that the sale and use of Plaintiff's product increases the exposure of its products to new customers. This leads to a continuous harm in the form of loss of potential customers, which in turn reduces Plaintiff's return on its investments in the '729 Patent and its Pro Glow line of products. *See generally Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (considering loss of access to

13

potential customers as evidence of irreparable harm). Consequently, Plaintiff's market share is actively being harmed by Subject Defendants' continued unlawful conduct.

### D. The Balance of Hardship Favors Plaintiff

The third factor, the balance of hardships, favors Plaintiff as well. As noted above, the stronger the showing of likelihood of success on the merits, the less the balance of harms needs to weigh in Plaintiff's favor. *See Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist. LEXIS 167796, *6 (N.D. Ill. November 27, 2012). In other words, "[t]he magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987) (overturned on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995)).

As set forth above, Plaintiff has made a strong showing of a likelihood of success on the merits of its patent infringement claim; thus, the balance of hardships need only weigh slightly in its favor. Likewise, several of the Subject Defendants appear to be "bazaar-style" sellers who sell a wide variety of unrelated products. Thus, the infringing products appear to be only one of several different revenue streams available to the Subject Defendants and enjoining just one of those products is unlikely to have a significant impact on the Subject Defendants' business operations. In any event, the only potential harm to Subject Defendants if this injunction is granted is that they would not be permitted to continue to sell an infringing product. This type of harm is a consequence of Subject Defendant's own infringing activities and therefore should not be considered when weighing the harms. In contrast, Plaintiff will suffer immediate irreparable harm for which there is no adequate remedy at law if this injunction is not granted, as set forth above. Accordingly, the

balance of harms weighs strongly in favor of Plaintiff. Moreover, Plaintiff has offered other Defendants an avenue to balance hardships and ensure that both Plaintiff and those Defendants are protected in their competing interests by allowing certain Defendants to place a bond in lieu of an injunction. Again, none of the Subject Defendants have placed a bond with the Court.

### E. Injunctive Relief Will Not Harm the Public Interest

The starting point for analysis of the public interest is favoring protection of a patentee like Plaintiff because of the "strong public policy favoring the enforcement of patent rights." *PPG Indus., v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech, v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Here, there is no public interest, let alone a critical one, that will be injured by the grant of the requested relief. The public has an interest in the functioning of its patent system and in encouraging fair business practices. See *PPG*, 75 F.3d at 1567. Accordingly, no public interest will be harmed by an injunction.

## III. BOND

Plaintiff has satisfied the security bond requirement under FRCP 65(c). In accordance with Fed. R. Civ. P. 65(c), and the Sealed Temporary Restraining Order issued by the Court on July 12, 2024, (Dkt. 15), Plaintiff deposited with the Court a $10,000 surety bond, as security. Plaintiff respectfully submits that, consistent with the findings in the TRO, the $10,000 surety bond already placed with the Court is sufficient to satisfy the security requirements of Rule 65.

## IV. CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without an injunction, Plaintiff respectfully requests that a hearing on its Motion be set at the Court's earliest convenience and that an injunction be entered.

Dated: August 6, 2024 Respectfully submitted,

/s/Nicholas S. Lee
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
Sameeul Haque
shaque@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:   (847) 969-9123
Fax:   (847) 969-9124

*Counsel for Plaintiff, Pathway IP LLC*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this August 6, 2024 Any other counsel of record will be served by electronic mail and/or first-class mail.

                                                  /s/ Nicholas S. Lee
                                                  Nicholas S. Lee