IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PATHWAY IP LLC,** | |
| Plaintiff, | **Case No. 1:24-cv-5218** |
| v. | **JURY TRIAL DEMANDED** |
| **The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on the Attached Schedule A,** | |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

Plaintiff Pathway IP LLC ("Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**I.     JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer

1

shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II.     INTRODUCTION

3. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. The existence of the Unauthorized Products has hampered Plaintiff's ability to enter and expand its footprint in the market, a market within which Plaintiff should have exclusionary rights under its patent.

4. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringement of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been,

and continues to be, irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III. THE PARTIES

5. Plaintiff, Pathway IP LLC, is a Delaware limited liability company registered to do business in the State of New York with its principal place of business at 400 Rella Blvd, Montebello, NY 10901.

6. Plaintiff is the lawful owner by assignment of all right, title, and interest in U.S. Patent No. 7,841,729 ("the '729 Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

7. The '729 Patent was issued on November 30, 2020. See **Exhibit 1**.

8. The '729 Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

9. Claim 1 of the '729 Patent reads

An illuminator device for illuminating one or more users in front of a web camera and a communication terminal comprising:

A bulb having a toroidal shape for emitting light;

A reflector having a circular configuration to conform to the toroidal shape of said bulb for projecting the emitted light;

And an arm disposed between said bulb and the terminal for connection to the terminal, wherein said bulb is positionable relative to the web camera to provide optimal viewing of the user through the web camera. See **Exhibit 1**.

10. Upon purchasing the '729 Patent, Plaintiff began marketing an embodying product under its Pro Glow line of products, which are available for sale on Plaintiff's website at https://proglowgear.com.

11. Plaintiff's product (*i.e.*, the webcam illuminator device) is designed to provide optimal lighting for users during video conferencing or online interactions, ensuring a more aesthetically pleasing appearance. The device aims to simulate professional studio lighting, enhancing the user's appearance during online interactions by ensuring their face is well-lit and free from harsh shadows.

12. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

13. The success of the invention claimed in the '729 Patent has resulted in significant infringement of Plaintiff's Patent. The significant infringement has hampered Plaintiff's ability to generate and expand market share for its Pro Glow line of products. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo, Inc., ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

14. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**). While the report set forth in Exhibit 3 refers to trademark counterfeiting, the same tactic is used by infringers of other intellectual property rights; including, as here, patent infringers who sell direct to consumers or bulk ship products to third party marketplaces.

15. As described in the report attached as Exhibit 3, counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, and, as a result, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*. Again, these statistics are similarly applicable to other types of infringement, including patent infringement.

16. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce

platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "*Combating Trafficking in Counterfeit and Pirated Goods*" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

17. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

19. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, some Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patents, and none of the Defendants are authorized retailers of Plaintiff's Products.

20. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

21. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

22. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted

payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

23. E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

24. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

25. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's

Patents in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

26. Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patents in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – THE '729 PATENT

27. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the '729 Patent.

29. As shown in the exemplary claim charts attached hereto as **Exhibit 6**, the products being sold by Defendants infringes at least Claim 1 of the '729 Patent. The claim charts of **Exhibit 6** are illustrative only and are made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of the '729 Patent.

9

30. Specifically, Defendants have infringed and continue to infringe each and every claim of the '729 Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

31. Defendants have profited by their infringement of the '729 Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

32. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the '729 Patent in connection with the offering to sell, selling, or importing of products that infringe the '729 Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

33. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

34. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the '729 Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

35. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION (15 U.S.C. §1125(a))

36. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

37. Despite Plaintiff having valid and enforceable patents, which were embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products that infringe upon Plaintiff's Patents. *See* **Exhibit 2** and **Exhibit 6**. These acts of infringement have prevented Plaintiff from generating and expanding its market share in what should have been an exclusive field.

38. By selling products which infringe upon Plaintiff's Patents, Defendants are competing for sales with Plaintiff and Plaintiff's Products with products that Defendants are prohibited from selling under U.S. Patent law.

39. By selling products which infringe upon Plaintiff's Patents, Defendants are competing for sales against Plaintiff in an unfair and unlawful manner.

40. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff as owner of the '729 Patent, allowing Defendants to profit from the goodwill, time, research, and development of the invention as embodied in Plaintiff's Patents and in Plaintiff's embodying Products, while causing Plaintiff irreparable and immeasurable injury.

41. On information and belief, Defendants have intentionally and blatantly infringed upon Plaintiff's Patents by selling Unauthorized Products to take unfair advantage of the enormous time, effort, and expense spent in connection with the '729 Patent and Plaintiff's efforts to cultivate

a successful market for the invention embodied in Plaintiff's Patents and in Plaintiff's Products in online marketplaces.

42. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

43. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

44. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' sale and/or offer of sale of products which infringe Plaintiff's Patents, constitutes unfair competition.

45. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

## COUNT III
## UNJUST ENRICHMENT – ILLINOIS STATE COMMON LAW

46. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47. Substantial time, money, and resources were spent in development of the invention embodied in Plaintiff's Patent and Plaintiff has similarly invested substantial time, money, and resources in acquiring the '729 Patent and launching its embodying products.

48. Plaintiff's Patent consists of a unique design, shape, and optimal lighting for users during video conferencing or online interactions, ensuring a more aesthetically pleasing

12

appearance. The device aims to simulate professional studio lighting, enhancing the user's appearance during online interactions by ensuring their face is well-lit and free from harsh shadows.

49. Plaintiff also spent substantial time, money, and resources in the development of Plaintiff's Product, including attempting to sell Plaintiff's Product directly to consumers. Efforts that have been stymied by Defendants' infringement and the availability of the Unauthorized Products.

50. Defendants traded upon the good will, reputation, research, and development associated with the invention claimed in the '729 Patent by selling products which infringed upon Plaintiff's Patents.

51. Defendants, by selling Unauthorized Products, are eroding Plaintiff's market share by preventing Plaintiff from entering the market, a market in which Plaintiff should have had exclusionary rights.

52. Unauthorized Products include the unique design, shape, and optimal lighting mechanism for users during video conferencing or online interactions.

53. Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patent and by selling those products they were eroding or excluding Plaintiff's market share and trading upon the good will, reputation, research, and development associated with the '729 Patent.

54. Defendants, by offering for sale and selling Unauthorized Products, improved their own good will and market share by trading upon the good will, reputation, research, and development of the '729 Patent.

13

55. On information and belief, Defendants have sold Unauthorized Products, further preventing Plaintiff from developing or expanding its market share and trading upon the good will, reputation, research, and development associated with the '729 Patent.

56. Plaintiff has never received any relief for the erosion and exclusion of its market share or any compensation from Defendants for their use of the good will, reputation, research, and development associate with the '729 Patent.

57. Defendants have been unjustly enriched because they have denied Plaintiff access to customers it would have otherwise had by participating in what should have been Plaintiff's exclusive market by selling products directly to consumers, products which infringed Plaintiff's Patents, and competing against Plaintiff's in the video conferencing or online interactions markets.

## COUNT IV
## UNFAIR COMPETITION – ILLINOIS STATE COMMON LAW

58. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

59. By marketing, advertising, and selling their products which infringe upon Plaintiff's Patents, Defendants are acting with the purpose and intent to deceive consumers into believing that their products are made by Plaintiff or are affiliated with or approved by Plaintiff.

60. By marketing, advertising, and selling their products which infringe upon Plaintiff's Patents, Defendants intend to harm and are harming Plaintiff's business.

61. As a result of Defendants' unfair competitive activities, Plaintiff has been damaged and will continue to be damaged unless Defendants are enjoined from infringing upon Plaintiff's Patents.

62. Plaintiff is also entitled to recover money damages to compensate for Defendants' unfair conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9) A finding that Defendants were unjustly enriched under Illinois common law.

10) A finding that Defendant engaged in unfair competition under Illinois common law.

11) That Plaintiff be awarded its reasonable attorneys' fees and costs.

12) Award any and all other relief that this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 12, 2024							Respectfully submitted,

/s/ Nicholas S. Lee
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
Sameeul Haque
shaque@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:	(847) 969-9123
Fax:	(847) 969-9124

*Counsel for Plaintiff, Pathway IP LLC*

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this August 12, 2024. Any other counsel of record will be served by electronic and/or first-class mail.

                /s/ Nicholas S. Lee
                 Nicholas S. Lee